28   72.
47 1686

No. 5821.

STATE EX REL. NEW ORLEANS REPUBLICAN PRINTING COMPANY VS. CHARLES CLINTON, AUDITOR.

In this case the money to pay relator has been previously appropriated by law, although the same may not yet be collected and paid into the treasury. It is undoubtedly, in view of the positive requirements of sections 183 and 184 of the Revised Statutes, the duty of the Auditor to issue the warrant demanded by relator for a claim audited by the Auditor himself, but of course the Treasurer will not be required to pay until the money appropriated has been actually paid into the treasury.

APPEAL from the Superior District Court, parish of Orleans. *Haw-kins*, J. *J. W. Thomas* and *A. C. Lewis*, for relator and appellant. *Charles S. Rice* and *H. C. Dibble*, for defendant and appellee.

WYLY, J. Relator appeals from the judgment refusing to make peremptory the mandamus issued to compel the Auditor to draw a warrant for the claim of relator for State printing, which claim has been duly

State ex rel. New Orleans Republican Printing Company vs. Clinton, Auditor

audited by him and is provided for in the general appropriation bill of 1875. With regard to the policy of issuing warrants for valid claims against the State, payment of which has been provided for in the general appropriation bill before the money has been collected and is actually in the treasury, this court has nothing to say. That is a matter pertaining to the political department of the government. The sole question is, is it a ministerial duty of the Auditor to issue the warrant required of him? That question we must answer in the affirmative, in view of the positive requirements of sections 183 and 184 of the Revised Statutes, which provide that: "In all cases of accounts audited and allowed against the State, and in all cases of grants, salaries, and expenses allowed by law, the Auditor shall draw a warrant on the Treasurer for the amount due. * * * No warrants shall be drawn by the Auditor, nor paid by the Treasurer, unless the money to pay the same has been previously appropriated by law." Here the money to pay relator has been previously appropriated by law, although the same may not yet be collected and paid into the treasury. It is undoubtedly the duty of the Auditor to issue the warrant, but of course the Treasurer will not be required to pay it until the money appropriated has been actually paid into the treasury.

It is therefore ordered that the judgment herein be annulled, and it is decreed that the mandamus sued out by relator be made peremptory, at respondent's cost in both courts.

---

### ON MOTION FOR REHEARING.

LUDELING, C. J. In this case the only question raised and decided was that the Auditor could not refuse to issue a warrant for a valid claim for which an appropriation had been made, and which had been audited by himself, on the ground that there was no money actually in the treasury at the moment the warrant was applied for.

Rehearing refused.

---

MORGAN, J. In the appropriation act of the Legislature of 1875 is to be found the following item:

"Appropriation to pay State Printer, ninety thousand dollars."

On the eighth of April, 1875, relators furnished to the Auditor of Public Accounts 271 reams of printed notices and one-half ream of printed circulars, for which they presented a bill for $4065.

On the thirtieth of April, 1875, they furnished the Auditor 137½ reams of assessors' lists of taxable property, for which they presented a bill for $3029. The articles charged for were received by the Auditor.

The relators then seem to have applied to the Auditor for a warrant upon the Treasurer for the above sums. The Auditor refused. They

then applied to the Superior District Court to compel him to comply with their demands.

The Auditor answered that the relators' petition showed no cause of action. That "when demand was made upon him, which demand he admits, there was no money in the State treasury out of which the warrants demanded, even if issued, could have been paid.

"That under the constitution and laws of the State he cannot issue warrants, nor can appropriations be made by the Legislature, in excess of the revenues of the State for the year for claims or expenses incurred during that year; that until revenue is collected and in the treasury no warrants can be legally drawn by him."

This is his answer in full. It is admitted that the Republican is the official printer of the State. The bills upon which the claim is based were received in evidence without objection.

The evidence shows that up to the time this proceeding was taken (eighteenth of May, 1875,) the Auditor had drawn no warrants whatever in favor of the relators or against the appropriation for printing.

As to the defense that the petition discloses no cause of action, I think this is answered by the fact that the demand is based upon work done for and received by the proper State officer.

The second and third grounds of defense are so intimately connected that they may be considered together.

Upon the question of fact, as to whether when the demand was made for a warrant there was no money in the treasury, the testimony, I think, is at best uncertain. The Auditor, examined as a witness, and being asked why the warrants were not issued, says that he cannot remember distinctly the condition of the general fund at the time the warrants were applied for, but he is satisfied that on April thirtieth there had been more warrants drawn against the general fund than there was money to pay, and that if another warrant had been issued the general-fund account would have been overdrawn. But the cashier of the treasury being asked whether the books in the Auditor's and Treasurer's offices are kept in such a manner that the Auditor can tell what money is in the treasury to the account of every fund from day to day, says that he don't think he can now.

I assume, however, that the Auditor, when he refused to issue the warrants, did so because he believed there was no money then in the treasury out of which they could be paid. I do not dispute the proposition that the constitution and laws of the State prohibit appropriations in excess of the revenues of the State for claims incurred during the year for which the appropriations were made. If this state of facts existed here, the relators' claim would come to a short end. But it will be observed that there is no allegation to that effect in the respondent's answer. He does

State ex rel. New Orleans Republican Printing Company vs. Clinton, Auditor.

not say that the appropriations are in excess of the revenue. He does not allege that the appropriation has been exhausted. His defense is simply that at the time the warrants were applied for there was no money in the treasury to the credit of the fund out of which the warrants would have to be paid. This defense is not a good one in my opinion.

In my opinion, when the Legislature makes an appropriation which is not justified by the constitution, for work to be done in the service of the State, and the work is done, and the appropriation therefor has not been exhausted, the party in whose favor the appropriation is made has the right to demand of the Auditor, and it is the duty of the Auditor to give him a warrant on the treasury for the value of the work done. Of course if the Treasurer has no money to the credit of the fund upon which the warrant is drawn the warrant will not be paid. But that is not. the question here. As to the right, however, of the relators, under the facts as they are presented in the record, to their warrants, I entertain no doubt.

I therefore concur in refusing the rehearing applied for.